UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EUGENE KENNETH JONES-EL,      )
                               )
    Plaintiff,                 )
                               )
    v.                         )    No. 4:05-CV-0028-CDP
                               )
SCOTT ROPER, et al.,           )
                               )
    Defendants.                )

## ORDER AND MEMORANDUM

On April 5, 2005, the Court ordered that the Clerk receive and file the complaint in this action without prepayment of the required filing fee; that process not issue upon the complaint because plaintiff was ordered to submit proof that he has exhausted his administrative remedies[1]; that plaintiff pay an initial partial filing fee; that plaintiff file with the Court, within thirty days, a detailed statement of his claims and what steps he took to exhaust such claims; and that, upon plaintiff's filing a response to this order, the Clerk resubmit this action to the Court for review pursuant to 28 U.S.C. § 1915(e). Plaintiff has taken steps to comply with the Court's Order, and it has now been resubmitted to the Court for review pursuant to § 1915(e). Although the Court set forth the standard of review and the gravamen of plaintiff's complaint in its Order of April 5, 2005, it will, for the sake of greater clarity, restate them below.

---

[1] The Court notes that its Order, entered on April 4, 2005, preceded the Eighth Circuit decision in *Guerra v. Kempker,* No. 04-3188 (8th Cir. 2005) (unpublished), filed on June 17, 2005, in which the Court held that an inmate's failure to exhaust available remedies is an affirmative defense which he need not plead.

**28 U.S.C. § 1915(e)**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis at any time if the action is frivolous. An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief may be granted if it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070 (1979).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984).

**The complaint**

Plaintiff, a Missouri state prisoner currently confined at the Southeast Correctional Center ("SECC"), and formerly confined at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC") seeks declaratory, injunctive, and monetary relief pursuant to 42 U.S.C. § 1983.[2] Named as defendants in plaintiff's complaint are Scott Roper (a social worker at ERDCC), Bob Holden (the former governor of the State of Missouri), Gary B. Kempker (director of the Missouri Department of

---

[2]Plaintiff previously filed this identical complaint with the Court and it was dismissed, without prejudice, for failure to exhaust administrative remedies. *See Jones v. Roper,* No. 4:03-CV-816-MLM (E.D. Mo.).

Corrections), George A. Lombardi (the Missouri Department of Corrections divisional director), Joseph J. Cassady (a Missouri Department of Corrections associate constituent), James Purkett (the ERDCC superintendent), Donna McCondichie (the former superintendent of the SECC), Paula Huffman-Philip (a SECC functional unit manager), Johnny Walker (a SECC classification board member), Danetta Henderson (an ERDCC corrections officer), Craig Hufford (an ERDCC psychologist), Sandra Prichette (an ERDCC corrections officer), Darin Brown (an ERDCC corrections officer), Sherry Fish (an ERDCC corrections officer), David W. Miller (an ERDCC corrections officer), Patti Counts (a SECC functional unit manager) and Steve Long (a Missouri Department of Corrections assistant director).[3]

Plaintiff alleges that the defendants: 1) denied him access to the courts; 2) subjected him to cruel and unusual punishment; 3) denied him due process; and 4) interfered with his right to privacy. In addition, plaintiff raises claims of violations of state law, prison procedure, and the Universal Declaration of Human Rights.

Specifically, plaintiff alleges that, on June 9, 2003, after he took a copy of a complaint and a "legal response" letter to defendant Roper for copies to be made, defendant Roper began reading the documents over his objections and, after placing a telephone call, stated that he would confiscate the documents. Plaintiff states that he had "gently pulled" the documents from defendant Roper's hands while defendant was on the telephone, and, upon hearing that defendant was going to confiscate them, he tore them up and dropped them on the floor.

---

[3]The Court notes that plaintiff made allegations against defendants Counts and Long in his original complaint but not in his response. Plaintiff was ordered to provide a detailed statement listing each of his claims in his response. However, plaintiff is proceeding under his original complaint; therefore, the Court will consider plaintiff's response in conjunction with said complaint, including his claims against defendants Counts and Long as set forth therein.

According to plaintiff, after he left defendant Roper's office and was returning to his housing unit, defendant Roper maced him, and defendants Prichette, Fish and Brown struck him about the head and shoulders with handcuffs and bare hands, causing him head and body injuries. Plaintiff further alleges that these defendants denied him medical treatment for his injuries. Plaintiff states that he was placed him into a temporary administrative segregation confinement cell where the temperature was below fifty degrees. Plaintiff states that he was charged with creating a disturbance.

Plaintiff alleges that, on June 11, 2003, he met with defendant Henderson who had in her possession the documents which plaintiff had torn up, now taped together. Defendant Henderson, however, would not return the documents to plaintiff or give him a reason why they were seized. Defendant Henderson recommended that plaintiff serve extra duty for sixteen hours, have his canteen spending limited for three months and be confined to disciplinary segregation for ten days for the conduct violation.

Plaintiff states that, while in disciplinary segregation, he was visited by defendant Hufford, a prison psychologist, who authorized defendant Miller to place plaintiff on suicide intervention status which consisted of "no mattress, no beding [sic] materials other than a steel bunk, no hygiene items, three section sheets of toilet paper for toilet usage, a sack lunch each 3 meals and a cloth apron to wear." Plaintiff further states that, in the process of being placed on suicide intervention status, defendant Miler issued him another conduct violation for "disobeying an order and violation of institutional rules." As a result of this violation, plaintiff met with the prison disciplinary board which recommended that he be transferred to another prison immediately.

On June 17, 2003, plaintiff states that he was transferred to the SECC and placed in temporary administrative segregation confinement. On June 18, 2003, he had a hearing before the

4

classification board which was headed by defendant Walker. The classification board recommended that plaintiff be committed to fifteen days extended segregation because he had accumulated two conduct violations in a six month period. Plaintiff contends that statements made by the board are untrue according to institutional services procedure.

Plaintiff alleges that, while he was confined to temporary administrative segregation confinement from June 17, 2003, to July 18, 2003, defendant Huffman-Philip and her staff refused to give him his personal property. Finally, plaintiff alleges that defendants Holden, Kempker, Lombardi, Long, Cassady, Purkett and McCondichie failed properly to supervise the named defendants.

**Discussion**

A.  **Denial of access to the courts**

Plaintiff's claims against defendants Counts, Prichette, Brown and Fish must be dismissed. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under section 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff).

Plaintiff's allegation as to defendant Counts is that she "supported" the actions of defendant Roper. Such allegation lacks sufficient specificity to state a § 1983 claim, showing no action taken directly by defendant that would evidence personal involvement or direct responsibility for the alleged constitutional deprivation. Plaintiff's claims against defendants Prichette, Brown and Fish relate only to plaintiff's claim of cruel and unusual punishment. He has not alleged that these defendants were personally involved in or directly responsible for deprivation of his constitutional

5

right to access to the courts. Plaintiff has made no other allegations against defendant Counts; therefore, she will be dismissed from this action. The Court will dismiss defendants Prichette, Brown and Fish as to this issue only.

Defendant Roper's actions are more troubling because documents filed with the court are public documents, and an inmate's using one as an example to aid him in asserting his own claims seems to differ little from the common practice of jailhouse lawyering. "The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts." *Cody v. Weber*, 256 F.3d 764, 768 (8th Cir. 2001). Nonetheless, the Court finds that plaintiff's claim as to this defendant must be dismissed because plaintiff has shown no actual injury.

The framework for considering whether an inmate's right of access to the courts has been infringed was established by the Supreme Court in *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174 (1996). *Lewis* made clear that actual injury is a "constitutional prerequisite" to maintaining such cause of action. *Id.* at 352-53. Actual injury exists only if "a nonfrivolous legal claim has been frustrated or was being impeded." *Id.* at 353. Thus, in order to make a claim that this right of access has been denied, plaintiff must demonstrate that his claim was nonfrivolous and that his effort to pursue it was hindered.

Plaintiff's claim that he wanted to file suit "regarding the conditions of confinement that directly affected me" and about which he had filed inmate resolution requests and grievances may be sufficient to survive threshold review as to the question of frivolity. However, plaintiff cannot meet the second element, that his effort to pursue his claim was hindered. It is clear from the instant action that plaintiff is very capable of filing a § 1983 action properly with or without the use of another inmate's action as an example. The Court's records show that plaintiff has filed no fewer than seven

§ 1983 actions. Because plaintiff can show no actual injury from his alleged denial of access to the courts, the Court will dismiss this claim.

**B. Cruel and unusual punishment.**

**1. Physical injury**

To state a claim under the Eighth Amendment, plaintiff "must prove unnecessary and wanton infliction of pain." *Friends v. Moore*, 776 F.Supp. 1382, 1389 (E.D.Mo.1991) (*citing Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085 (1986). "Cruel and unusual punishment exists, in the context of prison security, only where force is applied maliciously and sadistically for the very purpose of causing pain and suffering." *Id*. (*citing Cowans v. Wyrick,* 862 F.2d 697, 700 (8th Cir.1988).

Plaintiff alleges that he was maced, beaten about the head and shoulders with handcuffs and bare hands, and denied medical treatment when he had created no disturbance. Even if plaintiff's behavior prior to this alleged incident created a disturbance, the Eighth Amendment prohibits penalties that are grossly disproportionate to the offense. *See Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544 (1910). Plaintiff has sufficiently stated an Eighth Amendment claim for cruel and unusual punishment as to these issues[4]. Accordingly, plaintiff's claim as to these issues survives review under 28 U.S.C. § 1915(e)(2)(B) and should not be dismissed at this time.

**2. Cold cell**

Plaintiff's allegation that he was placed in a cold cell without bedding materials and

---

[4]The Court will not consider this issue under the Universal Declaration of Human Rights as asserted by plaintiff. Said Declaration is a resolution, not a treaty, and, as such, is not legally binding and does not create self-executing rights. *See Benas v. Baca,* 2001 WL 485168, *5 (C.D.Cal. 2001) (*citing Hawkins v. Comparet-Cassani*, 33 F.Supp.2d 1244 (C.D.Cal. 1999) *reversed in part by Hawkins v. Comparet-Cassani*, 251 F.3d 1230 (9th Cir. 2001)).

with no clothing except for a cloth apron does not state a claim upon which relief may be granted. The Eighth Circuit, in *Maxwell v. Mason,* 668 F.2d 361 (8th Cir.1981), stated, "...prisoners placed in punitive isolation may not be deprived of basic necessities, including light, heat, ventilation, sanitation, clothing and a proper diet." *Id*. at 365 (*quoting Finney v. Arkansas Bd. of Corrections,* 505 F.2d 194, 207-08 (8th Cir.1974). However, neither in plaintiff's complaint nor in his response to the Court's Order of April 4, 2005, does he identify which defendant or defendants were responsible for his placement in a particular cell or for the cell temperature being below 50 degrees. Plaintiff does not identify which defendant or defendants were deliberately indifferent to a request for proper heat, nor does he state that he made such a request.

Plaintiff states that defendant Hufford placed him on suicide intervention status for twenty-four hours, which resulted in his being deprived of bedding and clothing. Plaintiff states that defendant Hufford authorized defendant Miller to place him on suicide intervention status. Neither deprivations of minimal duration nor "depriving a suicidal person of such things as clothing or bedding" violate the Constitution. *Green v. Baron*, 879 F.2d 305, 309 (8th Cir.1989) (citations omitted). Defendants' actions did not violate plaintiff's constitutional rights because depriving him of bedding and clothing was consistent with placing him on suicide intervention status and is unrelated to where plaintiff was celled and the temperature of the cell.

While required to give the complaint a liberal construction, this Court is not required to supply additional facts or construct a legal theory for plaintiff that assumes facts that have not been pleaded. *See Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988). Because plaintiff was ordered to give the Court a detailed statement of his claims, the Court sees no purpose in allowing him to correct this deficiency. Thus, plaintiff has failed to state a claim as to this issue.

8

### 3. Placement on suicide intervention status

Plaintiff alleges that his right to be free of cruel and unusual punishment was violated while in segregation confinement. He states that he was visited by defendant Hufford, a prison psychologist, who authorized defendant Miller to place him on suicide intervention status, with its concomitant greater restrictions, for twenty-four hours.

"The United States Court of Appeals for the Eighth Circuit has 'repeatedly held that a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail to rise to the level of a constitutional violation.'" *Starbeck v. Linn County Jail*, 871 F.Supp. 1129, 1145 (N.D.Iowa 1994) (collecting cases). Here, plaintiff disagreed with defendant Hufford's medical judgment that he should be placed on suicide intervention status. Such disagreement fails to rise to the level of a constitutional violation. Additionally, defendant Miller cannot be held liable under the Eighth Amendment for following the doctor's orders and placing plaintiff on suicide intervention status.

Moreover, the Eighth Circuit, rather than asserting an unconditional prohibition on deprivations, has stated that several factors must be considered "in determining the constitutionality of deprivations, including the degree and duration of the deprivations, the reason for the deprivations, and the other surrounding circumstances." *Green*, 879 F.2d at 309 (citations omitted). Neither deprivations of minimal duration nor "depriving a suicidal person of such things as clothing or bedding" violate the Constitution. *Id*. (*citing Bell v. Wolfish,* 441 U.S. 520, 539 n. 21, 99 S.Ct. 1861, 1874 n. 21 (1979); *McMahon v. Beard,* 583 F.2d 172, 175 (5th Cir.1978) (additional citations omitted)). Thus, plaintiff's claim that he was on suicide intervention status for twenty-four hours and during that time was deprived of such things as bedding, hygiene items and clothing other than a "cloth

apron" does not state a constitutional violation. Accordingly, plaintiff's claim as to this issue fails and should be dismissed.

### C. Denial of due process

In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995), the Supreme Court addressed the question of whether disciplinary confinement of inmates itself implicates constitutional liberty interests. 515 U.S. at 486, 115 S.Ct. at 2301. The Court found that "...[plaintiff's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*; *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) ("We have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*.").

Under the *Sandin* standard, plaintiff's due process claim fails. He states that he was denied due process when defendant Walker committed him to extended segregation confinement and when defendant Henderson gave him extra duty, limited his canteen spending and further extended segregation confinement. Plaintiff's commitment to disciplinary confinement and the additional discipline meted out as to extra duty and limited spending do not create "the type of atypical, significant deprivation" which rises to the level of a constitutional violation. Accordingly, plaintiff's due process claim fails and should be dismissed.

### D. Right to privacy

The Court rejects plaintiff's assertion that his legal documents are entitled to confidentiality under the Sixth Amendment. An inmate's ability to communicate privately with counsel is necessary to effective assistance of counsel and is guaranteed by the Sixth Amendment. *See Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963 (1974). However, the documents taken from

10

plaintiff do not fall within the parameters of the Sixth Amendment because they belonged to another inmate and certainly involved no communication between plaintiff and his counsel. Moreover, as set forth above, plaintiff can show no actual injury from the taking of the documents as his access to the courts was not affected by the confiscation of the documents.

If the Court construed plaintiff's claim as arising under the Fourth or Fourteenth Amendment, his claim would still fail because the legal documents were publicly-filed court documents related to another inmate's case. The Supreme Court has recognized a constitutionally protected privacy interest in two areas: (1) "the individual interest in avoiding disclosure of personal matters" and (2) "the interest in independence in making certain kinds of important decisions." *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876 (1977). Neither of these facets of a constitutionally protected privacy interest is implicated in the documents at issue. Accordingly, the Court will dismiss this issue because plaintiff has alleged no facts which could lead to the conclusion that his Fourth, Sixth or Fourteenth Amendment right to privacy was violated by defendant.

### E. Retaliation

"Prison officials may not retaliate against an inmate for the exercise of a constitutional right." *Novak v. Mundt,* 2005 WL 1277834, *7 (D.Minn. 2005) (*citing Sanders v. St. Louis County,* 724 F.2d 665 (8th Cir.1983); 42 U.S.C. § 1997(d)). "To prevail on a retaliation claim, however, a party must allege and prove that the conduct did not advance legitimate correctional goals or was not tailored narrowly enough to achieve such goals." *Id.* (citations omitted). "The inmate must also prove that but for the unconstitutional, retaliatory motive, discipline would not have been imposed." *Id.* (*citing Rouse v. Benson,* 193 F.3d 936, 940 (8th Cir.1999).

11

With the exception of plaintiff's allegation of having been maced, beaten and denied medical care for the injuries allegedly sustained thereby, he has not made out such a claim. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301. Plaintiff "gently pulled" the document from defendant Roper's hands and, upon being informed that the document would be confiscated, plaintiff did not return it to defendant Roper but tore it up, dropped it on the floor and left the room. The discipline of being placed in segregation for these acts shows no unconstitutional, retaliatory motive without which discipline would not have been imposed. Further, as set forth above, the Court does not consider plaintiff's placement in suicide intervention status to be disciplinary. Accordingly, the Court will dismiss plaintiff's retaliation claims with the exception of his claim that he was maced, beaten and denied medical care, which may show retaliatory motive.

### F.  Respondeat superior

Plaintiff alleges that defendants Holden, Kempker, Lombardi, Cassady, Purkett and McCondichie are liable for violation of his constitutional rights for failure to exercise proper supervisory authority. However, as set forth above, liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell*, 909 F.2d at 1208; *Martin,* 780 F.2d at 1338 (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Glick*, 696 F.2d at 414-15 (respondeat superior theory inapplicable in § 1983 suits). Because plaintiff alleges only supervisory responsibility and there is no other basis for holding these defendants liable, claims against defendants Holden, Kempker, Lombardi, Cassady, Purkett and McCondichie must be dismissed.

### G. State law claims

Plaintiff asserts various state law claims, including 1) conversion for the handling of his personal property during his time in segregation; 2) conversion for taking and not returning his legal documents; and 3) assault and battery.

As to plaintiff's conversion claims, under Missouri law, "[c]onversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *General Elec. Capital Corp. v. Union Planters Bank, N.A.*, 409 F.3d 1049, 1053 (8th Cir. 2005) *(quoting Kennedy v. Fournie,* 898 S.W.2d 672, 678 (Mo.App.1995). "[A] plaintiff must show title to, or a right of property in, and a right to the immediate possession of the property concerned at the alleged date of conversion." *Id.*

Plaintiff's personal property was withheld during his time in segregation. While in segregation, plaintiff had no immediate right to his property, and plaintiff does not assert that the property was not returned to him. Accordingly, his conversion claim as to personal property fails because plaintiff had no immediate right to the property, and prison authorities did not assume the right of ownership over his personal property to the exclusion of his ownership rights.

Plaintiff's legal documents were of *de minimis* value and were essentially abandoned by plaintiff when he destroyed them. Accordingly, plaintiff's conversion claim as to his legal documents also fails.

Plaintiff's claim for assault and battery falls within the "broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." *Exxon Mobil Corp. v. Allapattah Services, Inc.*,

125 S.Ct. 2611, 2620 (2005); 28 U.S.C. § 1367(a). The Court will exercise original jurisdiction over plaintiff's claim that he was maced and beaten, *supra*. Therefore, plaintiff's state law claim for assault and battery survives review under 28 U.S.C. § 1915(e)(2)(B) and should not be dismissed at this time.

### H. Violation of prison policies and procedures

Plaintiff alleges that defendant Walker violated prison procedures in committing him to fifteen days' extended segregation time based upon his having accumulated two conduct violations within a six-month period. While noncompliance by prison officials with prison policies and procedures can violate constitutional rights, the deprivation at issue does not amount to such violation.

As the District Court for the Western District of Missouri observed in *Cupp v. Swenson*, 288 F.Supp. 1 (W.D.Mo. 1968), "no court has jurisdictional power, inclination, time, or expertise to administer the normal disciplinary problems of the Missouri State Penitentiary." 288 F. Supp. at 3. The same is true of a court's administering disciplinary problems in other Missouri state prisons. Only when an inmate alleges that "a federally protected constitutional right has been or is presently being violated by an employee of the Department of Corrections acting under color of state law" can the court legitimately exercise its jurisdiction. *Id*.

Inmates have "no liberty interest in remaining free from brief periods of disciplinary segregation." *Sandin,* 515 U.S. at 493, 115 S.Ct. at 2305; *Wilson v. Harper,* 949 F.Supp. 714, 723 (S.D.Iowa,1996) (collecting cases). Courts have found that extensive periods of disciplinary segregation do not state a constitutional violation. *Wilson*, 949 F.Supp. at 723 (*citing Cody v. Jones,* 895 F.Supp. 431, 441 (N.D.N.Y.1995) (approximately five months of restricted out-of-cell time); *Winfrey v. Ultsch,* 895 F.Supp. 229, 231 (E.D.Wis.1995) (apparent four months in disciplinary segregation). The Eighth Circuit did not think that 122 days of disciplinary detention, "including

14

fifteen days at the 'highest level of disciplinary detention,' were 'a dramatic departure from the ordinary incidents of prison life.'" *Id.* (*citing Moorman v. Thalacker*, 83 F.3d 970 (8th Cir.1996).

Because no federally protected constitutional right was violated where, allegedly contrary to prison procedures, plaintiff was given a fifteen-day extension of segregation time, plaintiff fails to state a claim upon which relief may be granted. Accordingly, the Court will dismiss this issue.

**Conclusion**

In sum, the Court finds that plaintiff has stated claims against defendants Roper, Prichette, Fish and Brown for cruel and unusual punishment in violation of the Eighth Amendment, for retaliation and for state-law assault and battery. Plaintiff's claims of denial of access to the courts, being housed in a cold cell, placement on suicide intervention status, denial of due process, violation of right to privacy, retaliation claims other than that stated above, respondeat superior claims, state-law claims for conversion, claim for violation of prison procedures and claims under the Universal Declaration of Human Rights are dismissed because they are legally frivolous, fail to state a claim upon which relief may be granted, or both. Thus, the Court finds that plaintiff has stated viable claims only against defendants Roper, Prichette, Fish and Brown. Defendants Holden, Kempker, Lombardi, Long, Cassady, Purkett, McCondichie, Counts, Huffman-Philip, Walker, Henderson, Hufford and Miller are dismissed because plaintiff's claims against them are legally frivolous or fail to state a claim upon which relief may be granted, or both.

Therefore,

**IT IS HEREBY ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants Holden, Kempker, Lombardi, Long, Cassady, Purkett,

McCondichie, Counts, Huffman-Philip, Walker, Henderson, Hufford and Miller because the claims against these defendants are legally frivolous or fail to state a claim upon which relief may be granted or both. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendants Roper, Prichette, Fish and Brown.

**IT IS FURTHER ORDERED** that pursuant to 42 U.S.C. § 1997e(g)(2), defendants Roper, Prichette, Fish and Brown shall reply to the remaining claims against them within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, pursuant to this Court's differentiated case management system, this case is assigned to Track 5B (standard-prisoner actions).

An appropriate order of partial dismissal shall accompany this memorandum and order.

Dated this 18th day of August, 2005.

_____
**UNITED STATES DISTRICT JUDGE**