UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EUGENE KENNETH JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV28 CDP |
| ) | |
| SCOTT ROPER, et al., ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Eugene Kenneth Jones alleges that several corrections officers at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri maced and beat him and denied him medical care in violation of state law and the Eighth Amendment of the United States Constitution. Four defendants remain, two of whom, Sherry Fish and Sandra Cachat (formerly Sandra Prichette), have moved to dismiss Jones' claims against them for failure to state a claim upon which relief can be granted and for failure to exhaust administrative remedies. Defendant Scott Roper was personally served on April 27, 2006, but has yet to answer or otherwise respond to Jones' complaint. The final defendant, Darin Brown, remains unserved.

Because Jones has failed to state a claim upon which relief can be granted against defendants Fish and Cachat, I will dismiss his claims against them. Further,

I will dismiss defendant Brown from this case pursuant to Fed. R. Civ. P. 4(m), as repeated efforts to serve him have been unsuccessful. Finally, I will order Jones to file appropriate motions for entry of default or default judgment against defendant Roper.

**Background**

On June 9, 2003, while Jones was incarcerated at ERDCC, he allegedly took a copy of a complaint and a "legal response" letter to Scott Roper, a social worker at ERDCC, to obtain photo copies. Roper began reading the documents over Jones' objections and, after placing a telephone call, stated that he would confiscate the documents. Jones claims that he "gently pulled" the documents from Roper's hands and, upon hearing that Roper would confiscate them, tore them up and dropped them on the floor.

Jones then exited Roper's office and passed defendants Brown, Cachat, and Fish talking with each other in the social workers' office area. While waiting by an exit door to return to his housing unit, Jones claims that Roper approached him from behind and began spraying pepper mace on his head and face. Cachat, Fish, and Brown then allegedly began striking Jones about the head and shoulders, causing him head and body injuries. The defendants then escorted Jones past the prison medical facility to one of the showers in the prison's temporary administrative

segregation confinement unit where they washed the pepper mace and "maybe blood" from Jones' head and face before placing him in a cell.

Jones filed a complaint against numerous defendants asserting a variety of claims on January 7, 2005. After frivolity review pursuant to 28 U.S.C. § 1915(e), four of his claims remain: retaliation, excessive force, denial of medical treatment, and state law assault and battery. Jones seeks damages as well as injunctive and declaratory relief on these claims.

## Discussion

**A.     Defendants Fish and Cachat**

Defendants Fish and Cachat claim that Jones' complaint should be dismissed for his failure to exhaust administrative remedies and for his failure to state a claim upon which relief can be granted. Generally, a defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6), Fed. R. Civ. P. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim entitling it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Young v. City of St. Charles, Missouri, 244 F.3d 623, 627 (8th Cir. 2001). When considering a motion brought pursuant to Rule 12(b)(6), the factual allegations of a

complaint are assumed true and are construed in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326 (1989). Because I conclude that the complaint fails to state a claim on which relief may be granted against Fish and Cachat, I do not consider all the other arguments raised by these defendants.

### 1. Equitable Relief

Fish and Cachat contend that Jones' claims for declaratory or injunctive relief against them must be dismissed as moot because Jones is no longer confined at ERDCC. It is undisputed that in June, 2003, Jones was transferred from ERDCC to Southeast Correctional Center (SECC) in Charleston, Missouri, where he still remains incarcerated. Fish and Cachat maintain that there is no threat of future violations that would warrant injunctive or declaratory relief.

Equitable relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)). Accordingly, prisoners' claims for injunctive or declaratory relief against particular prison employees are routinely denied as moot when a prisoner moves to a new facility. See Randolph v. Rodgers, 253 F.3d 342, 346 (8th Cir. 2001) (denying injunctive relief as moot against four prison guards at the Potosi

Correctional Center because the plaintiff had subsequently been transferred to the Jefferson City Correctional Center); Smith v. Hunley, 190 F.3d 852, 855 (8th Cir. 1999) (holding that prisoner's First Amendment challenges to certain prison policies and conduct were rendered moot by prisoner's transfer to a new prison facility a few weeks prior to his trial.); Martin, 780 F.2d at 1337 (prisoner did not have standing to seek injunctive relief to improve prison conditions after his transfer to a new prison).

I agree with Fish and Cachat that Jones' request for injunctive and declaratory relief against these two defendants is rendered moot by his transfer to SECC. Cachat and Fish are both corrections officers at ERDCC, and thus Jones cannot maintain that Cachat and Fish pose a future threat to him at SECC. Cf. Randolph v. Rodgers, 170 F.3d 850, 856 (8th Cir. 1999) (prisoner's claims for injunctive relief against Missouri Department of Corrections were not mooted by his transfer to another prison under the control of the Missouri Department of Corrections). In sum, Jones' claims for injunctive and declaratory relief against defendants Fish and Cachat must be dismissed as moot.

2. **Damages**

Fish and Cachat also maintain that Jones' claims for damages must be dismissed under the doctrine of qualified immunity.

Under the doctrine of qualified immunity, prison officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court has explained that the contours of a right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The action by the official does not have to have been previously held unlawful for a denial of qualified immunity. But in light of the pre-existing law, the unlawfulness of the action must be apparent. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

      **a.    Excessive Force**

Jones contends that Fish and Cachat's used excessive force to subdue him. A excessive force claim brought pursuant to the Eighth Amendment hinges upon whether the force was used "in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Farmer v. Brennan, 511 U.S. 825, 835 (1994). To make this determination, a court must consider the following factors: the need for force; the relationship between that need and the amount of force used; the nature of the threat reasonably perceived by the responding officers; efforts made to temper the use of force; and the extent of any injury suffered by the prisoner. Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citation omitted).

As Jones alleges in his complaint, the events on June 9, 2003 that gave rise to this claim arose in the confines of Roper's office. Neither Fish nor Cachat were privy to the substance of the dispute between Roper and Jones. Instead, Fish and Cachat were "engaged in talk with each other" in the area outside of Roper's office. According to the complaint, Jones left Roper's office, passed Fish and Cachat in the hallway, and then was maced by Roper while waiting at a locked door in the hallway. Only after Roper had fired the mace at Jones did Fish and Cachat begin to strike Jones "about the head and shoulders." Once subdued and handcuffed, Fish and Cachat then took Jones to a shower to wash the mace and "maybe blood" from his head and face.

Viewing these allegations in a light most favorable to Jones, I find that he has failed to allege facts from which I can infer that Fish and Cachat acted maliciously or sadistically. While Roper may have been unjustified in his initial use of force, the same cannot be said of Fish and Cachat's use of force to subdue Jones. Fish and Cachat had no reason to know why Roper decided to mace Jones, nor were they afforded the time to ascertain for themselves whether Jones' conduct in Roper's office warranted the use of additional force. They did, however, witness a fellow officer use force against Jones. At the time, Jones was standing, without handcuffs, in a hallway that contained other prisoners waiting to see Roper. Under these

circumstances, it was reasonable for Fish and Cachat to perceive Jones as a security threat that needed to be quickly subdued.

Further, there is nothing in the complaint to suggest that the means Fish and Cachat used to subdue Jone were excessive. "The infliction of pain in the course of a prison security measure ... does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley v. Albers, 475 U.S. 312, 319 (1986). While serious or permanent injury is not necessarily required to state an Eighth Amendment claim, some actual injury must be shown, and I must consider the extent of the pain inflicted to determine whether a constitutional deprivation has occurred. Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000) (citations omitted). See Stenzel v. Ellis, 916 F.2d 423427 (8th Cir. 1990) (holding that the forcible removal of a passive inmate from his cell did not constitute an Eighth Amendment violation in part because the inmate's injuries "were minor, required no medical treatment, and caused no permanent damage.") (citation omitted). Jones alleges that Fish and Cachat struck him "about the head and shoulders, causing [him] to sustain head and body injuries." Jones does not allege that his injuries were serious, permanent, or that they required any further medical care. He does not contend that he ever had to

seek further medical treatment for his injuries, nor does he allege to have suffered from any lingering physical ailments. Under these circumstances, Jones' allegations of pain, alone, cannot state a claim for cruel and unusual punishment.

By all indications, Fish and Cachat's use of force was aimed at quickly quelling an altercation that had arisen before them between Roper and Jones. I cannot conclude that Fish and Cachat's use of force under these circumstances violated Jones' clearly established constitutional rights. Accordingly, I will dismiss this claim against Fish and Cachat.

      **b.**      **Denial of Medical Care**

Jones also claims that Fish and Cachat violated his Eighth Amendment rights by denying him the right to be examined by a professional medical examiner after the altercation on June 9, 2003. According to the complaint, once Jones was subdued by the four officers, he was escorted to the prison's medical facility. Once there, however, the officers decided that he did not need a medical examination, and so they took him to a shower and washed the mace and possibly blood from his head and face.

To state a claim for denial of medical care under the Eighth Amendment, Jones must allege that Fish and Cachat were deliberately indifferent to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). "In order to succeed,

an inmate must show both that he or she had an objectively serious medical need and that the defendant knew of and disregarded that need." Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citations omitted). A serious medical need is either "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). A defendant's disregard for such a serious medical need must amount to "more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).

According to Jones, as a result of his altercation with the officers, he "could not see or breathe and was in pain." Under these circumstances, Jones contends that Fish and Cachat should have allowed him to be examined by the prison medical staff. Instead, the defendants opted to take him to a shower and wash the mace and "maybe blood" from his face and head. Fish and Cachat characterize these allegations as a mere disagreement over medical treatment, and I agree. Jones' allegations demonstrate that Fish and Cachat did not disregard his need for treatment after being sprayed with mace. They determined, however, that washing the mace from Jones' face in the shower was sufficient. This clearly was not Jones'

preferred course of treatment, but there is no indication that Fish and Cachat's approach did not cure Jones of his pain. See Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996) ("prompt washing of the maced area will usually provide immediate relief from pain."). In sum, Jones has failed to show that he had an objectively serious medical need that was disregarded by Fish and Cachat. Accordingly, this claim against Fish and Cachat must be dismissed.

### c. Retaliation

Jones also maintains that Fish and Cachat retaliated against him for the exercise of his constitutional rights. To establish a First Amendment retaliation claim against Fish and Cachat under 42 U.S.C. § 1983, Jones must show that (1) he engaged in a protected activity; (2) Fish and Cachat took adverse action against him that would chill a person of ordinary firmness from continuing the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity. Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004) (citing Naucke v. City of Park Hills, 284 F.3d 923, 927-28 (8th Cir. 2002). Under this third prong, Jones must demonstrate a causal connection between the constitutionally protected activity and the adverse action. Id.

Fish and Cachat maintain that Jones' retaliation claim against them fails under this third prong, and I agree. Jones has failed to allege any facts from which I can

reasonably infer that Fish and Cachat's use of physical force was motivated in part by Jones' exercise of his constitutional rights. As discussed above, the allegations may suggest that Roper acted sadistically, maliciously, or in retaliation for Jones' exercise of his constitutional rights, but the same cannot be said for Fish and Cachat. Fish and Cachat did not hear what transpired in Roper's office, nor did they initiate contact with Jones once he left Roper's office. Jones alleged that Fish and Cachat began beating him only after Roper initiated the altercation by tracking Jones down and spraying mace in his face. On the face of the complaint, there is no basis on which to impute Roper's motives to Fish and Cachat. Accordingly, Jones has failed to allege sufficient facts from which it can be inferred that Fish and Cachat's actions were motivated by Jones' exercise of his constitutional rights. Jones' retaliation claim against Fish and Cachat must therefore be dismissed.

### d. State Law Assault and Battery

Jones also asserts a state law claim of assault and battery against Fish and Cachat. Fish and Cachat now argue that this state law claim is barred under both the official immunity and public duty doctrines. The official immunity doctrine provides that public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions. Kanagawa v. State, 685 S.W.2d 861, 865 (Mo. 1987) (en banc), overruled on other grounds, Alexander

v. State, 756 S.W.2d 539 (Mo. 1988) (en banc). Public officers, however, may be held liable for torts committed when acting in a ministerial capacity. Id. Discretionary acts require the exercise of reason and discretion in determining how or whether an act should be done. Id. Ministerial acts are clerical in nature, and do not require the use of one's own judgment or opinion. Id.

There is no question that the acts of Fish and Cachat at issue in this case were discretionary. Fish and Cachat watched the altercation between Jones and Roper erupt before them. There is no indication from the complaint that they knew the reason for the altercation, or the real threat that Jones may have posed at that moment. Under the circumstances, the situation called for a quick judgment call on the part of Fish and Cachat of whether to assist Roper in subduing Jones. The actions employed by Fish and Cachat in restraining Jones were the product of their professional discretion and therefore Jones' state law claim of assault and battery against them must be dismissed. Because I find that official immunity bars the Jones' assault and battery claim, I need not address the public duty doctrine defense.

**B.     Defendant Darin Brown**

Defendant Darin Brown remains unserved. In recognition of the fact that Jones has no way of ascertaining the address of Brown except by obtaining this

information from defendants, I ordered the defendants and the Office of the Missouri Attorney General to file under seal the full name and address of Brown, so that service could be effected. They promptly complied with that Order, but the Marshal's service was not able to locate Brown at the address provided. The summons for Brown was returned unexecuted.

While I recognize that Jones may not have the means to locate Brown, the quest for service cannot continue indefinitely. I have accommodated Jones' circumstances as best I can be extending the time for service and ordering the defendants and the Office of the Missouri Attorney General to provide addresses for Brown. In the end, Jones, as the plaintiff, is responsible for service of a summons and complaint. Fed. R. Civ. P. 4(c)(1). Because he has been unable to effect service within a reasonable amount of time and has not provided any reason why further delay would be worthwhile, I will dismiss this action as to Brown without prejudice pursuant to Fed. R. Civ. P. 4(m).

**C.    Defendant Scott Roper**

The Attorney General's Office declined to accept service on behalf of Defendant Scott Roper because he is no longer an employee of the state. He was personally served by the Marshal's service on April 27, 2006, but has yet to answer or otherwise respond to Jones' complaint. His time for doing so has long expired,

and so he is in default. I will therefore order Jones to file a motion for clerk's entry of default, and a motion for entry of default judgment. Jones should attach to the motion for default judgment any affidavits or verified statements of damages that he believes support judgment against Roper. He should also provide a proposed order of default judgment against Roper.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants Sherry Fish and Sandra Cachat's motion to dismiss [# 17] is granted.

**IT IS FURTHER ORDERED** that pursuant to Fed. R. Civ. P. 4(m), this action is dismissed, without prejudice, as to defendant Darin Brown.

**IT IS FINALLY ORDERED** that plaintiff shall, within fourteen (14) days of the date of this order, file appropriate motions for entry of default and for default judgment against defendant Scott Roper, supported by all necessary affidavits and documentation, as well as proposed orders for the Court's consideration. Failure to comply with this order may result in dismissal without prejudice.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of September, 2006.