UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| EUGENE KENNETH JONES-El, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV28 CDP |
| | ) | |
| SCOTT ROPER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Eugene Kenneth Jones-El is a state prisoner who alleges that defendant Scott Roper violated his First and Eighth Amendment constitutional rights and committed assault and battery under Missouri state law. Roper seeks summary judgment on all of Jones's claims. Although I will grant Roper's motions with regard to Jones's First Amendment claim, I will deny summary judgment on his Eighth Amendment and state law claims. Genuine disputes of material fact remain regarding whether there was an objective need for the degree of force used by Roper and whether Roper may have acted with malice. When the evidence is viewed in the light most favorable to Jones, the claims must survive.

Facts[1]

On June 9, 2003, Jones was incarcerated by the Missouri Department of Corrections, an agency of the State of Missouri, at the Eastern Reception, Diagnostic and Correction Center in Housing Unit 8. At that time, Roper was employed at ERDCC as a case worker in Housing Unit 8. Before this incident, Jones and Roper had not had any altercations or problem interactions.

Roper's office was located within Housing Unit 8 in a small office area, which contains several other offices. Access to and from the office area is controlled by the "bubble" officer, and prisoners cannot enter or exit the office area without action by the "bubble" officer. Roper's office is approximately fifteen or twenty feet away from the access door.

At approximately 2:00 p.m., Jones went to Roper's office during office hours to request copies of a legal petition, a petition that had been filed in this Court by several other offenders. Jones was not a party to that lawsuit but wished to have a copy of that petition to assist him in filing his own lawsuit. After Jones requested a copy of the petition, Roper reviewed the document. Jones protested Roper's review of the document, and Jones took the document from Roper. Roper

---

[1]Because I must view the facts in the light most favorable to Jones in determining whether summary judgment should issue, these facts are accepted as true for the purposes of this motion only.

has testified, "It wasn't by force or anything like that. It wasn't even what I would consider write-up worthy." Roper then telephoned someone to determine what to do, and after conversing with that person, Roper informed Jones that he was authorized to take the petition from Jones. Jones protested this, telling Roper that he was wrong to confiscate the document and that it was not an illegal document. Jones did not raise his voice, yell, or shout at Roper. Then Jones tore up the petition and threw the pieces on the floor of Roper's office. Roper testified that he did not feel disrespected or offended by Jones's tearing up the document, but instead felt, "It was more of an annoyance than anything."

According to Jones, after he tore up the document, he left Roper's office and walked out to the access door of the office. Roper did not say anything to him but remained on the telephone. Roper did not give Jones any further orders. Jones then attempted to get the attention of the officer who controlled the access door and stood in front of the access door waiting to leave for approximately four or five minutes. After about five minutes, Roper came up behind Jones and began spraying him with pepper spray, without issuing any warnings or telling Roper to "cuff up." Roper then rushed Jones, smashed Jones's head against the door, and began hitting him. Jones injured his head and back and was cut under his left eye.

Discussion

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to Jones. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Roper has the burden to establish both the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once Roper has met this burden, Jones may not rest on the allegations in his complaint, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

1. First Amendment Retaliation

To prevail on his First Amendment retaliation claim, Jones must establish that he engaged in constitutionally protected conduct and that but for that conduct, Roper would not have retaliated against him. Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 2002). Roper argues that Jones did not engage in any constitutionally protected conduct because his action in disobeying Roper and tearing up the

document was not protected by the First Amendment. "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977). Prisoners are not entitled to openly flout lawful direct orders and then claim retaliation if punished for this disobedience. See Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam).

Jones was not constitutionally entitled to possession of the legal document. It was not his legal document, but belonged to another inmate, and the state of Missouri had a legitimate penological interest in restricting his access to the document. See Bear v. Kautzky, 305 F.3d 802, 806 (8th Cir. 2002). The undisputed evidence shows that Roper told Jones that he was authorized to take the document and that Roper asked Jones to give it to him. The parties agree that instead of giving Roper the document as ordered, Jones tore up the document and threw it on the floor. As Jones did not have a right to possess the document or to disobey Roper and destroy the document, he has not stated a claim of First Amendment retaliation.

    2.    Eighth Amendment Excessive Force Claim

The Eighth Amendment protects prisoners from unnecessary and wanton

inflictions of pain by corrections officers "regardless of whether an inmate suffers serious injury as a result." Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002). Prison officials may "use force reasonably in a good faith effort to maintain or restore discipline, but force is not to be used maliciously and sadistically to cause harm." Id. (quotations omitted) . In determining whether excessive force was used, I should consider: (1) whether there was an objective need for force, (2) the relationship between any such need and the amount of force used, (3) the threat reasonably perceived by the correctional officers, (4) any efforts by the officers to temper the severity of their forceful response, and (5) the extent of the inmate's injury. Id.

In Treats, the Eighth Circuit upheld a district court's denial of summary judgment and held that a genuine issue of material fact existed as to whether a correction officer's use of pepper spray and force was reasonable. In that case, the facts as set forth by the plaintiff showed that the plaintiff, a state prisoner, failed to obey commands and questioned a prison officer's actions, but did not pose a threat to the officer. Id. at 873. The officer demanded that the prisoner take a copy of a confiscation form, and the prisoner refused to take the form. The prisoner then turned to talk with the officer's supervisor, and without warning, the officer sprayed the prisoner with pepper spray. Another officer then slammed the

prisoner into the ground and handcuffed him. The prisoner did receive immediate medical attention, and his eyes and skin were flushed with water. Id. at 870. The prisoner claimed that he did not intentionally disobey the officer, did not use profanity or abusive language, and did not threaten any correctional officer.

In examining the facts in the light most favorable to the plaintiff, the Eighth Circuit found that the evidence did not show an objective need for the force used because the prisoner did not jeopardize any person's safety or threaten prison security. Id. at 872. The court noted, "Not every instance of inmate resistance justifies the use of force, . . . and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions." Id. at 873 (internal citations omitted). The Eighth Circuit further held, "A basis for an Eighth Amendment claim exists when, as alleged here, an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat." Id.

On the other hand, the Eighth Circuit has held pepper spray is appropriate to control a "recalcitrant inmate." Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000). In Jones v. Shields, the prisoner had refused his supervisor's order to mop the kitchen floor and was sent to the "riot gate" where he was met by another officer who told him he faced discipline for refusing to work and ordered him over

to a desk to give his name and prisoner number. Id. at 492. The prisoner questioned the order, but then complied. After this, he was ordered to go back to his barracks and asked to identify which barracks he lived in. At that point he became loud, argumentative, and profane. Only after he began using profanity, did the officer spray him with capstun and handcuff him. Id. at 492-93.[2]

Taking the facts of this case in the light most favorable to Jones, as I must in determining summary judgment, the evidence does not establish that there was an objective need for the degree of force used against Jones. Unlike Jones v. Shields, there is no evidence that Jones was recalcitrant or threatening. According to Jones, he tore up the document, walked out of Roper's office, walked fifteen feet away from Roper to the access door, and peacefully waited for approximately five minutes before Roper sprayed him with pepper spray and slammed him to the floor without warning. Roper was not threatened by Jones's taking and tearing up the document, and he had not previously regarded Jones as a problem inmate. Further, Jones did not curse or raise his voice to Roper, but instead, calmly waited

---

[2]The district judge held an evidentiary hearing in Jones v. Shields, and several prison officials testified. 207 F.3d at 492-93. The version of facts relied on by the Eighth Circuit appears to be the version presented by the prison officials. See Jones v. Shields, 207 F.3d at 497-500 (Arnold, J., dissenting). To the extent that Roper relies on this case for the proposition that I might ignore Jones's testimony and believe Roper's testimony as more credible, Jones v. Shields does not stand for that proposition. The Supreme Court has continually held that for the purposes of summary judgment, I must view the facts in the light most favorable to Jones.

at the access door for approximately five minutes.

Although Jones did disobey an order, this disobedience does not support Roper's use of pepper spray five minutes after the document was torn and left in his office. Although Roper contends that he used the pepper spray to "control a disruptive situation and secure an offender," the evidence as presented by Jones does not establish this.

Roper next argues that Jones's excessive force claim must fail because Jones has not presented evidence that he acted maliciously or sadistically. See Porter v. Nussle, 534 U.S. 516, 528 (2002). In Treats, the Eighth Circuit found that the prisoner had presented sufficient evidence of malice when he was sprayed with pepper spray and thrown to the ground without warning. 308 F.3d at 874. Similarly, if a jury were to believe Jones in this case, it could conclude that Roper acted maliciously by spraying Jones with pepper spray without warning and shoving him into a door and onto the ground five minutes after Jones had left Roper's office.

Finally, Roper contends that he is entitled to qualified immunity. In order to overcome this claim, Jones must show a violation of his clearly established constitutional rights. "A right is clearly established if its contours are sufficiently clear that a reasonable official would have fair warning of what type of action

would violate that right." Id. It is clearly established that prisoners are entitled to be free of malicious and sadistic use of force by prison officials where the use of force is intentionally injurious. Id. at 875. "It is also clearly established that force may be justified to make an inmate comply with a lawful prison regulation or order, but only if the inmate's noncompliance also poses a threat to other persons or to prison security." Id. As in Treats, when Jones was sprayed, the law clearly established that Roper did not have a blank check to use force simply because Jones was being difficult.

In Treats, the Eighth Circuit further recognized, "Prison regulations governing the conduct of corrections officers are also relevant in determining whether an inmate's right was clearly established." Id. In this case, the Missouri Department of Corrections procedure manual indicates that before the use of force, the employee should attempt to counsel the offender if time and circumstances permit. Based on the facts as alleged by Jones, after tearing up the document, he peacefully waited to be let out of the office for approximately five minutes before being attacked by Roper. Roper could have provided a warning before spraying Jones with pepper spray.

### 3. State Law Assault and Battery Claims

In addition to his federal claims, Jones alleges state law claims of assault

and battery against Roper. Roper argues that these claims must fail because his acts were discretionary, and therefore, he is entitled to official immunity. "Under Missouri law, the doctrine of official immunity shields public officers and state officials from civil liability for injuries arising out of their discretionary acts, functions, or omissions performed in the exercise of their official duties." Hawkins v. Holloway, 316 F.3d 777, 788-89 (8th Cir. 2003) (internal quotation omitted). Under Missouri law, discretionary acts "are those acts involving the official's exercise of reason in developing a means to an end, and the employment of judgment to determine how or whether an act should be performed or a course pursued." Id. at 789 (internal quotation omitted). Still, official immunity "does not apply where the official's discretionary act was undertaken in bad faith or with malice." Id. As I have already found that Jones has presented sufficient evidence to establish malice for the purposes of his excessive force claim, Roper is not entitled to summary judgment on Jones's assault and battery claims under the official immunity doctrine regardless of whether or not his acts were discretionary. See Wagner v. City of Pine Lawn, 2008 WL 350988, at *7 (E.D. Mo. Feb. 7, 2008).

Roper also argues that the public duty doctrine protects him from civil liability in this case. This argument completely misrepresents the public duty

doctrine. Jones alleges intentional tort law claims of assault and battery against Roper, not claims of negligence. "The public duty doctrine holds that a public official, or a public employee, may not be held liable to a person injured by his <u>negligence</u> in the performance of his public duty, because his duty is owed only to the general public, and not to the person injured." <u>Brown v. Tate</u>, 888 S.W.2d 413, 416 (Mo. Ct. App. 1994) (emphasis added). The public duty doctrine does not protect against intentional tort claims of assault and battery.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Scott Roper's motion for summary judgment [#103] is granted in part and denied in part. Jones's First Amendment retaliation claim is dismissed, but his claims under the Eighth Amendment and Missouri state law remain pending.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 1st day of April, 2008.